BALDAUF, APPELLANT, *v.*
KENT STATE UNIVERSITY, APPELLEE.

(No. 88AP-60—Decided
September 20, 1988.)

*Luper, Wolinetz, Sheriff & Neidenthal, Stanley L. Myers* and *Marya C. Kolman,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Sheryl L. Maxfield* and *William J. McDonald,* for appellee.

STRAUSBAUGH, J. This is an appeal by plaintiff from a judgment of the Court of Claims in favor of defendant on plaintiff's claim for negligence.

Plaintiff, Cindy Baldauf, was a student at Kent State University when, on September 11, 1983, she injured her left ankle when she slipped and fell on steps in a dormitory residence. The dormitory, Altmann Hall, was located on the campus of defendant, Kent State University. As a result of the injury and plaintiff's need for subsequent medical treatment, this suit was initiated in the Court of Claims.

At trial, evidence was introduced that plaintiff had never been to Altmann Hall until the day of the accident and that she had already made one trip up and down the steps without any difficulty prior to the incident. Although plaintiff testified that the cause of her injury was the fact that the concrete on one of the steps crumbled, no such crumbs were found. There was conflicting testimony as to whether the lighting for the stairwell was adequate. Although defendant's witnesses freely admitted that the steps were not in perfect condition and in fact were in need of repair, their testimony also indicated that the steps did not appear to have a tendency to crumble. Defendant also adduced evidence at trial that it had had neither actual nor constructive notice regarding the condition of the steps or to the adequacy of the lighting in the stairwell. Based on this evidence, the trial court rendered judgment in favor of defendant on the issue of liability.

On appeal, plaintiff asserts the following assignments of error for our review:

"I. The trial court erred in requiring appellant to prove that the defective area of steps was unreasonably dangerous and that appellee had

notice of the defective condition because appellee was obligated to provide appellant, who was an invitee, with premises in a reasonably safe condition.

"II. The trial court's decision was against the manifest weight of the evidence in the record."

Under her first assignment of error, plaintiff maintains that the trial court applied the wrong legal standard by which to measure defendant's duty of care. It is plaintiff's position that as an invitee, defendant owed her the duty of keeping the premises in a reasonably safe condition and of warning her of latent or concealed defects or perils of which defendant had or should have had knowledge. Had the trial court applied the proper legal standard, plaintiff insists that the evidence in this case would establish defendant's liability. Specifically, plaintiff argues that the evidence at trial clearly indicated that the condition of the steps constituted a "moderate hazard" and that they were in need of urgent repair. The evidence also established that the condition of the steps occurred over the course of two winters, during which time defendant conducted surveys to assess maintenance needs. In plaintiff's view, such evidence is tantamount to constructive notice.

As her second assignment of error, plaintiff maintains that the judgment of the trial court was against the manifest weight of the evidence. Specifically, plaintiff contends that the trial court erred in finding that plaintiff failed to demonstrate that she fell on the steps in Altmann Hall or that her injury was the proximate result of such fall. The record is replete with evidence which supports plaintiff's assertion that she fell on the steps leading into Altmann Hall on September 11, 1983 and sustained an injury to her ankle. Plaintiff also maintains that the trial court erred in finding that the

defect was open and obvious since the evidence only established that the defect was obvious in the daylight, but could not be seen at night. Even more obvious, however, is the trial court's finding of fact number four which states that the defective condition of the steps was open and obvious while finding of fact number five states that plaintiff failed to show that Kent State University had notice of the defective condition of the steps. To the extent a defect is open and obvious, it is clear that defendant had notice of it. Plaintiff finally asserts that the findings of the trial court that she was negligent in failing to use a handrail and that such negligence was the proximate cause of her injury are against the manifest weight of the evidence.

Plaintiff's first assignment of error raises two issues which require our attention. First, plaintiff contends that the trial court applied the wrong legal standard, requiring that she show the steps upon which she fell to be unreasonably dangerous rather than requiring defendant to provide her with premises in a reasonably safe condition. The second issue raised by plaintiff's first assignment of error and in part by her second assignment of error is whether the trial court erred in requiring plaintiff to prove that defendant had notice as to the condition of the steps.

It is clear that business invitees are those persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner. *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E. 2d 453. In the present case, there is no dispute that plaintiff's presence on university property accorded her the status of an invitee. Therefore, we begin our review of plaintiff's first assignment of error with the well-established rule that the possessor of premises owes a

duty to an invitee to exercise ordinary or reasonable care for his or her safety and protection. This duty includes maintaining the premises in a reasonably safe condition and warning an invitee of latent or concealed defects of which the possessor has or should have knowledge. *Id.* However, it is also well-established that balanced against this duty, the owner of premises is not to be held as an insurer against all forms of risk. *S. S. Kresge Co.* v. *Fader* (1927), 116 Ohio St. 718, 158 N.E. 174.

Since the trial court stated in its findings that plaintiff had failed to demonstrate that the steps upon which she fell were "unreasonably dangerous," and this has caused considerable confusion, we will attempt to clarify the use of that term. We begin our review of premises liability with *Kimball* v. *Cincinnati* (1953), 160 Ohio St. 370, 52 O.O. 237, 116 N.E. 2d 708, in which the Supreme Court considered imperfections in a sidewalk. The court held that slight defects of sidewalks commonly encountered would not constitute sufficient grounds for imposing liability upon a municipality to one who fell while traversing them. The rule set forth in *Kimball* regarding municipal liability was followed by *O'Brien* v. *Toledo* (1957), 167 Ohio St. 35, 4 O.O. 2d 4, 146 N.E. 2d 122; *Gallagher* v. *Toledo* (1959), 168 Ohio St. 508, 7 O.O. 2d 364, 156 N.E. 2d 466; and *Buckley* v. *Portsmouth* (1959), 168 Ohio St. 513, 7 O.O. 2d 366, 156 N.E. 2d 468.

Thereafter, the Supreme Court again considered the issues relative to defects in a sidewalk in *Smith* v. *United Properties, Inc.* (1965), 2 Ohio St. 2d 310, 31 O.O. 2d 573, 209 N.E. 2d 142. Chief Justice Taft in his dissenting opinion set forth the elements to be shown by an invitee in order to recover for her injuries:

"In order to recover from the occupier of premises for personal injuries sustained in a fall claimed to have been caused by the condition of those premises, a business invitee must allege and prove that the fall was proximately caused by some *unreasonably dangerous* condition of the premises." (Emphasis added.) *Id.* at 316, 31 O.O. 2d at 576, 209 N.E. 2d at 146.

Chief Justice Taft went on to say:

"The question as to whether the condition of premises complained of is an *unreasonably dangerous* condition is usually a question of fact for determination by the jury or other trier of the facts. However, where reasonable minds cannot determine that such condition was unreasonably dangerous, the trial court should not permit a jury to determine that it was. * * *" (Emphasis added.) *Id.* at 317, 31 O.O. 2d at 577, 209 N.E. 2d at 147.

The Chief Justice's dissent is of more than mere casual interest now since approximately seven months later, the Supreme Court in *Helms* v. *American Legion, Inc.* (1966), 5 Ohio St. 2d 60, 34 O.O. 2d 124, 213 N.E. 2d 734, adopted the dissent in *Smith* and extended the rule of *Kimball* to privately owned properties as well. In the opinion, Judge Zimmerman stated:

"* * * A majority of this court as now constituted with its regular complement of judges agrees with the dissenting opinion in the *Smith* and *Schilliger cases* to the effect that no liability rests on the owner or occupier of private premises for minor imperfections therein (here almost minimal in extent), which are commonly encountered and are to be expected and which are not unreasonably dangerous, representing 'trivial departures from perfection.' Otherwise, such owner or occupier would be placed in the position of an insurer, and the law does not go that far." *Id.* at 62, 34 O.O. 2d at 126, 213 N.E. 2d at 736.

Thus, simply stated, in *Helms* the Supreme Court refused to impose

liability where the imperfection complained of is minor, normally encountered and not unreasonably dangerous.

The preceding discussion illustrates that the unreasonably dangerous standard has been applied in order to prevent the owner or occupier of premises from being held to the level of an insurer. Certainly a landowner owes a duty of reasonable care to those he invites upon his property but where a defect is so insubstantial and of the type that passersby commonly encounter, courts will refrain from imposing liability. As stated in 2 Harper & James, Law of Torts (1974) 1489-1491, Section 27.13:

"People can hurt themselves on almost any condition of the premises. That is certainly true of an ordinary flight of stairs. But it takes more than this to make a condition *unreasonably* dangerous. If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight. This is true of the flight of ordinary stairs in a usual place in the daylight. It is also true of ordinary curbing along a sidewalk, doors or windows in a house, counters in a store, stones and slopes in a New England field, and countless other things which are common in our everyday experience. It may also be true of less common and obvious conditions which lurk in a place where visitors would expect to find such dangers. The ordinary person can use or encounter all of these things safely if he is fully aware of their presence at the time. And if they have no unusual features and are in a place where he would naturally look for them, he may be expected to take care of himself if they are plainly visible. In such cases it is enough if the condition is obvious, or is made obvious (*e.g.,* by illumination). The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence the obvious character of the condition is incompatible with negligence in maintaining it. If plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendant's negligence towards him, no matter how careful plaintiff himself may have been. * * *" (Footnotes omitted.)

Applying the holdings of the cases cited herein, the court is of the opinion that the trial judge in this case, who assumed the role of trier of fact, could reasonably have concluded that the defective nature of the steps did not rise to the level of being unreasonably dangerous. The evidence which was presented at trial established that defendant did make efforts to inspect the premises by conducting a walking survey in 1975 and 1984 for determining the priority of maintenance and repair. In addition, there was testimony that additional inspections of the campus were made annually to discover defects.

It was also a proper question of fact as to whether the step did actually crumble or if plaintiff merely missed a step and fell. The trial judge who heard the evidence and had the opportunity to view the credibility of the witness is in the best position to make such a determination. There was also evidence that the steps were used by many persons on a daily basis with no other complaints. It is reasonable that after having reviewed all of the evidence, the trier of fact could have determined that the deterioration of the steps which had occurred was so insubstantial as to not constitute a dangerous condition for persons ordinarily using them and thus not being unreasonably dangerous as required by

the Supreme Court's decision in *Helms* v. *American Legion, Inc., supra,* to establish negligence on the part of the defendant. Cf. *McLaughlin* v. *Ohio Veterans' Children's Home* (1987), 37 Ohio App. 3d 136, 524 N.E. 2d 521.

As to the second issue raised by plaintiff's first assignment of error, we recognize that courts are unwilling to impose liability upon the owner or occupier of premises absent a showing that the owner or occupier had notice of the defective condition of which the injured party complains. The rationale for such a rule was stated in *LaCourse* v. *Fleitz* (1986), 28 Ohio St. 3d 209, 210, 28 OBR 294, 296, 503 N.E. 2d 159, 160:

"* * * It is only where it is shown that the owner had superior knowledge of the particular danger which caused the injury that liability attaches, because in such a case the invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate. *Debie* [v. *Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St. 2d 38, 40]; *Mikula* [v. *Slavin Tailors* (1970), 24 Ohio St. 2d 48, 57]."

However, we need not reach the issue of defendant's notice of the condition of the steps due to our preceding discussion. In a case where a defect is so trivial or minor and is of a type routinely encountered as not to give rise to liability, the question of notice becomes irrelevant. Therefore, plaintiff's first assignment of error is not well-taken and is overruled.

Plaintiff's second assignment of error alleges that the trial court's decision was against the manifest weight of the evidence. The Supreme Court, in *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, held in its syllabus:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

In the present case, the Court of Claims, sitting as trier of fact, had before it credible evidence which would permit it to decide that the steps leading into Altmann Hall were reasonably safe for persons to use and that the defect which existed was so insubstantial as not to be unreasonably dangerous for normal use. The mere happening of an accident in and of itself is not sufficient to establish negligent conduct on the part of a defendant. The trial judge could have reasonably determined that plaintiff's accident could have been easily avoided had she exercised the amount of precaution an ordinary person would in traversing a stairway. As there was sufficient evidence to support the trial court's decision in favor of defendant, this court will not determine the weight to be accorded the evidence.

For the foregoing reasons, both assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and BRYANT, J., concur.